James E. LONDON and Alyce J. London, Appellants,

v.

The TRINITY COMPANIES, the TRINITY UNIVERSAL INSURANCE COMPANY of KANSAS, INC., Appellee.

No. 80077.

Court of Appeals of Oklahoma, Division No. 3.

April 12, 1994.

John B. Nicks, Tulsa, for appellants.

Mickey James, Earl G. Williams, Green, James & Williams, Oklahoma City, for appellee.

*MEMORANDUM OPINION*

BAILEY, Judge:

James E. London and Alyce J. London (collectively, the Londons) seek review of the Trial Court's order granting summary judgment to The Trinity Companies, The Trinity Universal Insurance Company of Kansas, Inc. (Trinity) in the Londons' action for breach of an insurance contract and bad faith. In this appeal, the Londons challenge the constitutionality of the appraisal provision of 36 O.S.1991 § 4803, and assert questions of fact exist regarding Trinity's conduct

in the appraisal process and tender of payment, precluding summary judgment.

The Londons' residence sustained fire damage on November 20, 1988. The Londons informed their insurance carrier, Trinity, and Trinity issued a $1,000.00 check to the Londons three days after the fire to cover interim living expenses. On December 17, 1988, the Londons hired a professional adjuster, Bretz, to represent them in their loss adjustment with Trinity. Bretz acknowledged receipt of the $1,000.00 and requested an additional $1,000.00 for living expenses, which Trinity paid on January 12, 1989. One week later, Bretz submitted the Londons' proof of loss statement in the total amount of $64,375.00.

On February 3, 1989, a representative of Trinity advised Bretz of the need to document the Londons' additional living expense claim in order to obtain same under policy provisions. On February 16, 1989, Trinity paid the Londons $16,250.00 representing the balance of coverage on the dwelling's contents. On February 17, 1989, Trinity informed Bretz of rejection of the proof of loss due to disagreement over the amount of loss to the Londons' dwelling. Bretz then demanded an appraisal pursuant to policy provisions, and chose an appraiser. Trinity named their appraiser, and both appraisers agreed on an umpire.

The appraisal was conducted, and in early May 1989 the appraisers and umpire signed an appraisal award in the amount of $20,577.74. Trinity tendered this amount to the Londons, Bretz, and the mortgagees. In mid-May and again in July, 1989, Trinity paid additional living expense claims in the amount of $1,214.53 and $1,666.05, respectively. All checks tendered, totalling over $41,000.00, were negotiated by the Londons.

The following month, the Londons filed suit against Trinity alleging Trinity breached the contract of insurance by "failing to pay the amount owed to the [Londons]," and that Trinity's conduct entitled the Londons to punitive damages. Trinity moved for summary

judgment on the Londons' bad faith claim, which the Trial Court granted. However, the Trial Court reserved the issue of "the dispute over damages" for the trier of fact, and found the appraisal award non-binding.

Thereafter, Trinity again moved for summary judgment on the issue of contract damages, which the Trial Court granted, this time finding the appraisal binding on the party requesting appointment of appraisers—the Londons—and further finding no evidence of "fraud, collusion or other improper action" by the appraisers or umpire, thus resolving all issues in favor of Trinity. The Londons appeal.

The Londons first challenge the constitutionality of the appraisal process pursuant to policy provisions and mandated by 36 O.S. § 4803. However, our Supreme Court has recently held the appraisal provisions of § 4803 constitutional.[1] We therefore reject this proposition. Within their constitutional challenge, the Londons also attack § 4803 as an impermissible special law. We view this argument as an extension of Londons' "access to the courts" argument and, as such, we similarly reject this argument.

The Londons next assert a question of fact exists regarding whether Trinity unreasonably and in bad faith "withheld" additional living expense payments for six months. In support thereof, the Londons argue they received the first payment for additional living expenses some six months after the fire. The Londons conclude that Trinity withheld these payments in bad faith in order "to oppress the [Londons] and take advantage of their stress and poverty" and to achieve a superior bargaining position.

The record reflects Trinity, after "advancing" the Londons $2,000.00 and promptly paying the Londons in excess of $16,000.00 for personal property loss, twice advised the Londons' agent, Bretz, of the necessity for documenting any additional living expense claim. The Londons do not controvert their failure to provide the requested documenta-

---

1. *Massey v. Farmers Insurance Group,* 837 P.2d    880, 884 (Okl.1992).

tion, arguing that Trinity neglected to adequately explain the policy provisions.

▆▆▆▆ The essence of a bad faith claim is the insurer's unreasonable and unjustifiable withholding of payment.[2] That is, tort liability may only be imposed where the insurer acted unreasonably in withholding payment,[3] and a bad faith claim will not lie in the presence of a legitimate dispute.[4] In the present case, the policy provisions required the Londons to document any additional living expense as the evidence showed Trinity explained in detail to Bretz. The Trial Court, in granting summary judgment to Trinity, found no evidence of bad faith, holding:

> Trinity promptly recognized that the [Londons'] loss was covered by the policy; some payment was made shortly after the fire. Practices of the insurance industry are no doubt baffling and frustrating to many people as it likely was to the [Londons]. This does not mean that the insurer must pay whatever the insured requests or demands or risk paying punitive damages through a claim of bad faith.

Under these facts and circumstances, we cannot say the Trial Court erred in granting summary judgment to Trinity on the issue of bad faith.

▆▆▆ The Londons also complain Trinity's conduct in the appraisal process constituted bad faith, fraud, overreaching, and/or manipulation. Thus, argue the Londons, the appraisal is not binding on them. In support thereof, the Londons rely on evidence adduced below, i.e., a letter from Trinity to its chosen appraiser, requesting the appraiser to pay close attention to the estimate prepared by Trinity's adjuster regarding the dwelling loss, and other evidence showing that Trinity only sent the appraiser its adjuster's low estimate and not an earlier, higher one, as well as Trinity's admission that appraisers do not "need to be advised" of an adjuster's appraisal. The Londons also presented evi-

dence arguably showing that the Londons' chosen appraiser signed the appraisal document only to acknowledge same but not necessarily to indicate agreement.

Viewing this evidence in the light most favorable to the Londons, we, as did the Trial Court, find no evidence tending to support even an inference of Trinity's bad faith. That is, Trinity's request to its appraiser to pay special attention to Trinity's in-house adjuster's estimate is advisory only, not mandatory. Moreover, the law imposes no obligation on Trinity to send its designated § 4803 appraiser any estimates, much less low ones. Finally, the Londons' appraiser did sign the appraisal, for which a neutral third party chosen by each party's disinterested appraiser acted as umpire and also signed the appraisal. Under these circumstances, we find, as did the Trial Court, the actions of the parties to the appraisal fall well short of bad faith or other conduct indicating "fraud, collusion or other improper action" as to support the Londons' bad faith claim. We therefore find no error in the order of the Trial Court granting summary judgment to Trinity.

The order of the Trial Court granting summary judgment to Trinity is therefore AFFIRMED.

HUNTER, P.J., and GARRETT, V.C.J., concur.

2. *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583 (Okl.1981).

3. *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okl.1978).

4. *Manis v. Hartford Fire Insurance Co.*, 681 P.2d 760 (Okl.1984).