Bobby D. CHRISTIAN, Appellant,

v.

AMERICAN HOME ASSURANCE
COMPANY, an Insurance
Corporation, Appellee.

No. 48735.

Supreme Court of Oklahoma.

July 12, 1977.

As Amended on Denial of Rehearing
March 10, 1978.

Rehearing Denied April 26, 1978.

Bill Pipkin, William C. Leach, Moore, for appellant.

Arlen E. Fielden, Brooke S. Murphy, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellee.

SIMMS, Justice:

The primary question presented by this appeal is whether under Oklahoma law an insurance company may be subjected to liability in tort for a willful, malicious and bad faith refusal to pay a valid insurance claim.

The trial court held that an insurer could not be subjected to such liability and sustained American Home Assurance Company (Appellee's) motion for summary judgment, dismissing Bobby Christian's (Appellant's) action. From that ruling, Bobby Christian brings this appeal.

The following facts gave rise to this action and, for the purposes of this opinion, they will be accepted as undisputed. While appellant was employed by the Dowell Division of the Dow Chemical Company, he participated in a group disability insurance program offered through Dowell to its employees by appellee. Appellant's premiums were all paid in timely fashion. Under circumstances which were covered by the policy, appellant sustained an accidental injury which left him permanently and totally disabled. Appellant presented proof of his disability to appellee as required by the policy and made demand for maximum benefits. Appellee refused payment on the claim for reasons which were unknown to appellant. Appellant brought action against appellee in the District Court of Garvin County alleging appellee's breach of the insurance contract and seeking to recover the maximum policy benefits plus interest. Although appellee had refused to pay the claim and fully litigated the action, it became apparent during the trial that appellee did not have, and had never had, a defense to appellant's claim. Judgment was rendered in favor of appellant for maximum benefits, plus interest. Appellee paid the judgment in full.

Thereafter, appellant filed this action in Oklahoma County seeking to impose liability in tort upon appellee for its bad faith refusal to pay his valid claim. Appellant alleged appellee's knowledge of the validity of the claim and the absence of any legitimate grounds for appellee's refusal to pay. Appellant alleged that he had believed appellee was acting fairly and in good faith in denying his claim and that it was not until after trial commenced in the Garvin County action, that he discovered appellee had refused payment of the claim in bad faith. Appellant alleged that appellee had a duty to treat him fairly and to act in good faith and that appellee breached this duty by its bad faith, willful and malicious refusal to pay his claim which it knew to be valid. For this tortious breach of appellee's duty, appellant sought to recover attorney's fees and litigation costs expended in the Garvin County action, compensatory damages,

damages for mental suffering and distress and punitive damages.

Appellee entered a demurrer and a motion for summary judgment to which it attached certified copies of the petition, judgment and release and satisfaction of judgment in the Garvin County suit. The trial court did not specify the legal theory upon which it sustained appellee's motion for summary judgment.

On appeal, appellant urges us to join with the growing number of jurisdictions which now recognize a cause of action in tort against an insurer for a bad faith refusal to compensate its insured for a loss covered by the policy.[1] This is a distinct tort based upon an implied duty of the insurer to act in good faith and deal fairly with its insured. This duty is not consensual, it is imposed by law. Breach of the duty sounds in tort, notwithstanding that it also constitutes a breach of contract, and plaintiff insured may recover consequential and, in a proper case, punitive, damages. The essence of the cause of action is bad faith.

In *Fletcher v. Western National Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 47 A.L.R.3d 286 (1970), the insurer refused to pay the insured plaintiff under the disability policy's injury provision, which had a maximum liability period of 30 years. Instead, insurer insisted upon paying under the sickness provision, which had a maximum liability period of 2 years, even though insurer's own investigation showed insured's disability resulted from injury, not sickness. The insurer attempted to avoid liability on the policy by falsely claiming insured had made a material misrepresenta-

tion and then tried to force insured into a disadvantageous settlement.

Insured suffered financial disaster and emotional distress and brought action under the theory of intentional infliction of emotional distress. The court held that the insurer violated its implied-in-law duty of good faith and fair dealing, and the court discussed this duty as follows:

"An insurer owes to its insured an implied-in-law duty of good faith and fair dealing that it will do nothing to deprive the insured of the benefits of the policy. * * * Included within this duty in the case of a liability insurance policy is the duty to act reasonably and in good faith to settle claims against the insured by a third person. * * * The violation of that duty sounds in tort notwithstanding that it may also constitute a breach of contract. * * * We think that, similarly, the implied-in-law duty of good faith and fair dealing imposes upon a disability insurer a duty not to threaten to withhold or actually withhold payments, maliciously and without probable cause, for the purpose of injuring its insured by depriving him of the benefits of the policy. We think that, * * * the violation of that duty sounds in tort notwithstanding that it also constitutes a breach of contract."

While plaintiff's action was brought under the theory of intentional infliction of mental distress, the court held that the insurer's violation of its implied duty of good faith and fair dealing constituted an additional tort for which damages were recoverable. The court stated that:

1. See, *Silberg v. California Life Ins. Co.,* 11 Cal.3d 452, 113 Cal.Rptr. 711, 521 P.2d 1103 (1974); *Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973); *Fletcher v. Western National Life Ins.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 47 A.L.R.3d 286 (1970); *United Services Auto Assn. v. Werley,* Alaska, 526 P.2d 28 (1974); *State Farm Gen. Ins. Co. v. Clifton,* 86 N.M. 757, 527 P.2d 798 (1974); *United States Fidelity & Guaranty Co. v. Peterson,* Nev., 540 P.2d 1070 (1974); *Chavez v. Chenoweth,* N.M.App., 553 P.2d 703 (1976); *John Hancock Life Ins. Co. v. McNeill,* Ariz.App., 556 P.2d 803 (1976); *Amsden v. Grinnell Mutual Reinsurance Co.,* Iowa, 203 N.W.2d 252 (1972); *Escambia Treating Co. v. Aetna Casualty & Surety Co.,* 421 F.Supp. 1367 (N.D.Fla.1976); *Eckenrode v. Life of America Ins. Co.,* 470 F.2d 1 (7 Cir. 1972); Cf., applying statutes: *Key Life Insurance Co. of South Carolina v. Mitchell,* 129 Ga.App. 192, 198 S.E.2d 919 (1973); *Matthews v. Travelers Ins. Co.,* 212 Kan. 292, 510 P.2d 1315 (1973); *Citizens Discount and Investment Corp. v. Dixon,* Mo.App., 499 S.W.2d 231 (1973); See also: 3 J. Appleman, Insurance Law and Practice, § 1601 et seq. (1967); See also: Annot., Insurers' Liability for Consequential or Punitive Damages for Wrongful Delay or Refusal to make Payment Due Under Contracts. 47 A.L.R.3d 314.

"We hold, therefore, that defendants' threatened and actual bad faith refusals to make payments under the policy, maliciously employed by defendants in concert with false and threatening communications directed to plaintiff for the purpose of causing him to surrender his policy or disadvantageously settle a non-existent dispute is essentially tortious in nature and is conduct that may legally be the basis for an action for damages for intentional infliction of emotional distress. We further hold that, independent of the tort of intentional infliction of emotional distress, such conduct on the part of a disability insurer constitutes a tortious interference with a protected property interest of its insured for which damages may be recovered to compensate for all detriment proximately resulting therefrom, including economic loss as well as emotional distress resulting from the conduct or from the economic losses caused by the conduct, and, in a proper case, punitive damages."

In *Fletcher, supra,* the court discussed the special relationship between an insurer and its insured which gives rise to the duty of good faith and fair dealing. The court observed that the industry has a quasi-public nature, that it involves the public interest and for that reason it is largely governmentally regulated. The consumer has no bargaining power and no means of protecting himself from the kinds of abuses set forth in appellant's petition. The following discussion of this special relationship between an insurance company and its insured, is relevant here:

" * * * To some extent this special relationship and these special duties take cognizance of the great disparity in the economic situations and bargaining abilities of the insurer and the insured. * * To some extent the special relationship and duties of the insurer exist in recognition of the fact that the insured does not contract '. . . to obtain a commercial advantage but to protect [himself] against the risks of accidental losses, including the mental distress which might follow from the losses. Among the considerations in purchasing . . . insurance, as insurers are well aware, is the peace of mind and security it will provide in the event of an accidental loss . . .' *These considerations are particularly cogent in disability insurance. The very risks insured against presuppose that if and when a claim is made, the insured will be disabled and in strait financial circumstances and, therefore, particularly vulnerable to oppressive tactics on the part of an economically powerful entity."* (emphasis added)

We have recognized the quasi-public nature of insurance companies and the need to subject the companies to state control for the protection and benefit of the public. *Oklahoma Benefit Life Ass'n v. Bird,* 192 Okl. 288, 135 P.2d 994 (1943). Perusal of our Insurance Code, Title 36, Oklahoma Statutes, reveals the extensive government regulation of the industry in this state.

We have previously held that insurance companies have a duty to act in good faith and deal fairly with their insured when handling claims made against insured by third parties. For the breach of this duty we have imposed liability against the insurer for amounts in excess of the policy limits. *American Fidelity and Casualty Co. v. L. C. Jones Trucking Co.,* Okl., 321 P.2d 685 (1958); *National Mutual Casualty Co. v. Britt,* 203 Okl. 175, 200 P.2d 407 (1948).

Appellee contends that these decisions do not control the instant case because they were concerned with "agency" relationships created by insurer's exclusive control of litigation against insured. Appellee argues that the duty of good faith and fair dealing is limited to these agency situations and cannot be expanded to cover the relationship of insurer and its insured.

According to appellee, a policy of disability insurance is an obligation to pay money only and is not burdened with any additional duties, such as litigation defense, which would give rise to an agency relationship with its consequent exposure to tort liability for bad faith dealing.

Appellee argues that a policy of disability insurance, being an obligation to pay money only, recovery thereunder is specifically controlled by 23 O.S.1971, § 22, which states:

"The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon."

Appellee also cites 23 O.S.1971, § 9, which provides:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

Appellee relies upon these statutes to support its position that irrespective of its intent in refusing appellant's claim, and no matter how willful its refusal, appellant's damages are limited to the amount of the policy because it is simply a breach of an obligation to pay money only. Under these statutes, appellee argues that the damages sought by appellant (attorney's fees, compensatory damages, mental distress, punitive damages) are not recoverable. In addition, appellee contends that there is simply no duty in tort under Oklahoma law which would give rise to a cause of action for a willful and bad faith refusal to pay a claim.

In support of these contentions, appellee relies upon two federal decisions considering Oklahoma law which concluded that an insurance contract was for the payment of money only, and that recovery for the breach thereof was limited by 23 O.S.1971, § 22, to the amount of the obligation, plus interest. *Renfroe v. Preferred Risk Mutual Insurance Company,* 296 F.Supp. 1137 (N.D. Okl.1969); *Ledford v. Travelers Indemnity Co.,* 318 F.Supp. 1333 (W.D.Okl.1970). Appellee also relies upon *Wilson v. The Prudential Insurance Co. of America,* Okl.App., 528 P.2d 1135 (1974), wherein our Court of Appeals cited *Renfroe, supra,* and *Ledford, supra,* as authority for its holding that in an action by insured against insurer, recoverable damages are limited to the terms of the policy plus interest under 23 O.S.1971, § 22.

The decisions of *Renfroe, Ledford* and *Wilson, supra,* presuppose that the obligation of an insurance company is for the payment of money only.

■ With all due respect to our brethren of the federal bench, we find the obligation of an insurer to its insured upon proper presentation of a valid claim under a disability policy, is not limited to the payment of money only.

Our Insurance Code requires insurance companies to make *immediate* payment of claims. Title 36, O.S.1971, § 4405 A 8, requires the following provision to be included as a standard clause in all individual[2] accident and health policies:

"TIME OF PAYMENT OF CLAIMS: Indemnities payable under this policy for any loss .* * * will be paid immediately upon receipt of due written proof of such loss."

■ This statutory duty imposed upon insurance companies to pay claims immediately, recognizes that a substantial part of the right purchased by an insured is the right to receive the policy benefits promptly. Unwarranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy.

While this provision would not deter an insurance company from refusing payment on a claim that it had reasonable cause to believe was factually or legally insufficient, it does express the intent of our legislature to impose upon insurance companies an obligation to pay a valid claim on a policy promptly.

---

**2.** This provision is also required in group policies, such as is involved here. 36 O.S.1971, § 4505 requires that "no such policy of group . . . accident and health insurance shall contain any provision relative to . . . the time for paying benefits . . . which is less favorable to the individuals insured than would be permitted by the standard provisions required for individual accident and health insurance policies."

The obligation of an insurance company, such as appellee, on a disability policy is not for the payment of money only, it is the obligation to pay the policy amount immediately upon receipt of proper proof of loss or to defend in good faith and to deal fairly with its insured. To the extent that *Wilson v. The Prudential Ins. Co. of America, supra*, is inconsistent with the views expressed herein, it is disapproved.

In *Gruenberg v. Aetna Insurance Company*, 9 Cal.3d 566, 510 P.2d 1032 (1973) the California Supreme Court upheld insured's right to proceed in tort against his insurers for their willful and bad faith refusal to compensate him for losses covered by fire policies. The court set forth the following clear analysis of the insurer's implied duty of good faith and fair dealing, and rejected the contention appellee raises here, that the duty of good faith applies only in handling claims of third persons against insured. The court stated:

"The duty of an insurer to deal fairly and in good faith with its insured is governed by our decisions in *Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173, and *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 328 P.2d 198. We explained that this duty, the breach of which sounds in both contract and tort, is imposed because '[t]here is an implied covenant of good faith and fair dealing in every contract [including insurance policies] that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.' (*Comunale*, supra, at p. 658, 328 P.2d at p. 200.) Therefore, 'an insurer . . . who refuses to accept a reasonable settlement within the policy limits in violation of its duty to consider in good faith the interest of the insured in settlement, is liable for the entire judgment against the insured even if it exceeds the policy limits.' * * *

"Thus, in *Comunale* and *Crisci* we made it clear that '[l]iability is imposed [on the insurer] not for a bad faith breach of contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing.' * * * In those two cases, we considered the duty of the insurer to act in good faith and fairly in handling the claims of third persons against the insured, described as a 'duty to accept reasonable settlements' "; in the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.

\* \* \* \* \* \*

"It is manifest * * * that in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to act is imminent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort."

■ We approve and adopt the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought. We do not hold that an insurer who resists and litigates a claim made by its insured does so at its peril that if it loses the suit or suffers a judgment against it for a larger amount than it had offered in payment, it will be held to have

breached its duty to act fairly and in good faith and thus be liable in tort.

We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

Appellee also contends that even if appellant did have a cause of action for bad faith refusal to pay his claim, appellant's judgment in the former (Garvin County) action is res judicata, and a bar to the instant suit. Appellee argues that appellant has split his cause of action and that he·is precluded from pursuing this recovery for damages.

█ It is an elementary rule that a cause of . action cannot be split or divided and made the subject of several suits, but that plaintiff must include in one action all the various items of damage he has suffered from defendant's wrong. *Empire Oil & Refining Co. v. Chapman,* 182 Okl. 639, 79 P.2d 608 (1938); *State v. North American Life Ins. Co. of Chicago,* 203 Okl. 672, 225 P.2d 796 (1950).

█ This rule exists primarily to protect defendant from vexatious litigation. As the rule is for the defendant's protection, he may waive its benefits, either expressly or impliedly. *Empire Oil & Refining Co. v. Chapman, supra; Aetna Cas. & Sur. Co. v. Associates Transports, Inc.,* Okl., 512 P.2d 137 (1973).

It has also been held that defendant's own conduct may estop him from invoking the rule. Where plaintiff's omission of an item of his cause of action was brought about by defendant's fraud, deception or wrongful concealment, the former judgment has been held not to be a bar to suit on the omitted part of the claim. See, *Vineseck v. Great Northern Ry. Co.,* 136 Minn. 96, 161 N.W. 494, 2 A.L.R. 530 (1917); *Hyyti v. Smith,* 67 N.D. 425, 272 N.W. 747 (1937); *United States Rubber Co. v. Lucky Nine, Inc.,* Fla.App., 159 So.2d 874 (1964); *Gaither Crop v. Skinner,* 241 N.C. 532, 85 S.E.2d 909 (1955); *Adams v. Pearson,* 104 N.E.2d 267 (1952); *See, also:* 2 A.L.R. 534, and 142 A.L.R. 905; Restatement, Judgments § 62; 50 C.J.S. Judgments § 667.

Here insured alleges that appellee willfully, and with malice and oppression, concealed the fact that it denied his claim unreasonably and in bad faith without any legitimate cause. Taking appellant's allegations as true, which we must under these circumstances, it was not until the Garvin County action was about to be submitted to the jury that insured discovered that his insurer had acted in bad faith and had concealed its lack of good faith from him.

█ Appellee was under a legal duty to act in good faith and deal fairly with appellant in the handling of his claim, and to pay the claim promptly (36 O.S.1971, § 4405 A 8.) Instead, appellee acted in bad faith and then concealed this fact for as long as possible. The concealment of facts by one under a duty to disclose them for the purpose of depriving another of that which is rightfully his, is, by definition, a deceitful act. 76 O.S.1971, § 3(3).

Appellee's argument asks us to sanction, not only its malicious, willful and oppressive refusal to pay a valid claim to its disabled insured, but also its fraudulent concealment of these true facts from insured until such time as his right to pursue a remedy in tort would be prejudiced. This we will not do.

█ Under the unique and nonrecurring circumstances presented here, we hold that the primary purpose of the rule against splitting a cause of action—protecting a defendant from vexatious litigation—is not applicable here and that defendant is estopped, by his own conduct, from relying upon the former judgment as a bar to this action.

For this reason, *Stone v. Beneficial Life Insurance Co.,* Or., 542 P.2d 892 (1975) upon which appellees rely in support of their res

judicata argument, is not persuasive. In *Stone, supra,* the Oregon court found that plaintiff beneficiary's first action against insurer for proceeds of policy, barred her subsequent action for punitive damages for insurer's bad faith refusal to pay on the policy. In that cause, however, there was no contention made by plaintiff that the omission of that claim from the former action was caused by the fraud or concealment of the defendant. Therefore, there was no claim that the situation came within the exception discussed above.

■■ Appellant seeks recovery of the attorney fees he was forced to expend in the prosecution of his Garvin County action. Ordinarily, attorney fees may not be recovered in the absence of an agreement or statutory authority. *Globe & Republic Ins. Co. v. Independent Trucking Co.,* Okl., 387 P.2d 644 (1963). One exception to this rule is that where a litigant has acted in bad faith, wantonly or for an oppressive reason, the trial court, in exercise of its equitable power, may award attorney fees. *City National Bank & Trust Co. v. Owens,* Okl., 565 P.2d 4 (1977). Whether appellant comes within the exception of *City National Bank, supra,* will be a question for the trial court upon proper presentation of pleadings and proof.

The order of the trial court is Reversed, and the cause is Remanded for further proceedings not inconsistent with the views expressed in this opinion.

HODGES, C. J., LAVENDER, V. C. J., and WILLIAMS, BERRY, BARNES and DOOLIN, JJ., concur.